36 So.2d 547

**TENNESSEE COAL, IRON & R. CO. v.
MARTIN et al.**

6 Div. 735.

Supreme Court of Alabama.
June 24, 1948.

Rehearing Denied July 31, 1948.

D. K. McKamy, Jas. A. Simpson, Benners, Burr, Stokely & McKamy and Lange, Simpson, Robinson & Somerville, all of Birmingham, for petitioner.

Crampton Harris, Wm. E. Mitch and Harris & Brown, all of Birmingham, opposed.

GARDNER, Chief Justice.

In view of the difference of opinion existing in the Court of Appeals, and the troublesome nature of the question arising in this cause, we issued the writ of certiorari in order that it may be set down for oral argument and extensive briefs. Exhaustive research by industrious counsel, as well as oral argument, for the respective parties has presented every phase of the questions here involved. Indeed, counsel for both appellant and appellee have gone into the record for facts which do not appear in the opinion of the Court of Appeals. But we consider that a matter of no material importance, as the facts so appearing sufficiently present the questions here for review.

As, upon due consideration, we have concluded that the majority opinion of the Court of Appeals, prepared by Judge Harwood, correctly decides the case, we feel that more elaborate discussion is here unnecessary and would in fact serve no useful purpose. Reduced to a simple analysis, that opinion merely holds that the coal mines in which there was no labor dispute

was an "establishment" within the meaning of our Unemployment Compensation statute. Title 26, Sec. 214, Code 1940.

■■ Counsel for appellant very forcefully argued the historical background of legislation of this character, both by the British Parliment and by several states of this Union. To this argument we have given most careful study. Counsel also lay stress upon the difference in our own Act and that of some other states, notably, as we recall, Wisconsin and Michigan, in which the legislative enactment contains a preamble concerning the policy of the state in passing the law. But when the constitutionality of the 1935 Unemployment Compensation Act was tested in Beeland Wholesale Co. v. Kaufman, 234 Ala. 249, 174 So. 516, 522, the act was upheld upon the theory of the exercise by the state of its police power. We therein stated the evident purpose of the Act to the effect that it was part of a nationwide program to prevent wide spread unemployment for an appreciable period, and that it was co-ordinated with similar acts in other states. We therein observed: "Extensive unemployment depreciates consumer purchasing power, and tends to demoralize a large class of citizens, and to stimulate crime, disorder, and social degradation. That is the rationale of the program, as we understand it. * * * Economic welfare on a large scale extending to every form of business and affecting every person in a state is within its police power to protect as well as their purely physical and moral condition. * * * But such conditions do, as everybody knows, affect the physical and moral welfare of the people. Starvation or the tendency to it, due to economic depression, is as alarming and dangerous to the state and its people as that condition due to flood, drouth, or earthquake."

There are other expressions of similar import, all of which lead to the result that in the passage of this statute the state was within the exercise of its police power. We merely make mention of these observations, reiterated in Department of Industrial Relations v. Drummond, 30 Ala. App. 78, 1 So.2d 395, here reviewed in Department of Industrial Relations v. Drummond, 241 Ala. 142, 1 So.2d 402, **as**

162

indicating the failure of the Legislature in the passage of the Act to have a similar preamble to that of other states is a matter of no material consequence.

 The majority opinion of the Court of Appeals directs attention to the well known principle that humanitarian statutes of this character are to be liberally construed, and that the disqualification of a worker from the benefits thereof constitutes an exception which should be narrowly construed. It is the duty of the courts in construing the statute to carry out the legislative intent and rules of construction are merely aids to this end. But these rules of construction are here important to be considered for they in fact form the basis of the ruling in this case. Certainly, as recognized in the majority opinion, due regard must be given to the plain meaning of the language of the statute. True, there are many definitions in the dictionary given to the word "establishment." But we think the definition as found in Webster's New International Unabridged Dictionary, Second Edition, as a 'place of business, is perhaps the one most commonly used and understood, and applicable to the language of our statute. In Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876, the court, construing the word "establishment" in an Act of Congress held that it was used in the Act as "normally used in business and in government—as meaning a distinct physical place of business." Clearly enough under the liberal interpretation of this statute, and the strict construction rule applicable to the matter of disqualification, the courts would not be justified in construing this word as meaning functional integrality and general unity of the business of a large corporation as the Tennessee Coal, Iron & Railroad Company with its many and varying units of industry. From the facts as found by the Court of Appeals, it is clear enough that the coal mine was the physical place of business of this claimant, and that being the normal and usual meaning and application of the word "establishment," we are persuaded that the Court of Appeals was correct in giving that interpretation, as found in the majority opinion. The Illinois court in

Walgreen Co. v. Murphy, Director, etc., 386 Ill. 32, 53 N.E.2d 390, expressly determined the meaning of the word "establishment" with the observation that words of a statute are to be taken in their ordinary meaning in general and popular use unless a different. meaning was intended, and such meaning must be accepted unless clearly wrong. Though differing in some respects from our own statute, the case of Wicklund v. Commissioner of Unemployment Compensation and Placement, 18 Wash. 2d 206, 138 P.2d 876, 148 A.L.R. 1298, from the Supreme Court of Washington, in coi. .ing the statute of that state, sustains a like view.

The cases most nearly in point upon which appellant relies, the Spielmann case from the Wisconsin court and the Chrysler case from the Michigan court, we have examined with particular care. We rest content with the observation of the Court of Appeals from these two authorities, but with the' further observation, however, that no stress appears to have been made by the courts in those cases upon the matter of liberal construction of the statute and strict construction of the disqualification provision. It is only fair to state that the dissenting opinion of Justice McAllister, concurred in by Justice Bushnell, in the Chrysler case does lay emphasis upon this fundamental rule of construction, observing that to bring the claimant within the influence of the exceptions, it is necessary to strain at the meaning of the language of the statute and to read into the act exceptions with regard to "integrated industry," which are not mentioned anywhere in the legislation. We have likewise considered other authorities noted by appellant, among them Tucker v. American Smelting & Refining Co., Md., 55 A.2d 692; Carnegie-Illinois Steel Corp. v. The Review Board, Ind.App., 72 N.E.2d 662; Johnson v. Pratt, 200 S.C. 315, 20 S.E.2d 865; General Motors Corp. v. Mulquin, 134 Conn. 118, 55 A.2d 732, as well as rulings of some administrative boards. In large part these several rulings take their lead from the Spielmann and Chrysler cases, which we consider have been sufficiently dealt with by the Court of Appeals, to which discussion we need add no further additional

comment. While much more could well be written upon this question, we think what has been said suffices for all purposes, and we forego further discussion.

We are of the opinion, therefore, that the judgment of the Court of Appeals should be here affirmed.

In view of the further holding of the Court of Appeals, however, that this complainant's unemployment was directly due to a labor dispute, it becomes necessary for us to observe that in view of our affirmance of the judgment of the Court of Appeals upon the ground above noted, and upon which that court based its ruling, a discussion and consideration of this question becomes unnecessary and is therefore left to one side.

Upon the part of the appellee the insistence is that the Drummond case is decisive in their favor and upon that theory the three judge trial court rested its decision. While on the other hand appellant insists that the Drummond case was to be differentiated though it contains dictum supportive of the trial court. Upon this question there may here be a difference of view. Whatever might be said, however, upon that question would itself be dictum, and as a general rule the courts very properly decline to enter into discussions which are not decisive of the case. We merely make these observations to the end that we may not be bound by the holding of the Court of Appeals upon this particular question. It is left here undetermined.

Let the judgment stand affirmed.

Affirmed.

All the Justices concur.